DREW v. AMERICAN AUTOMOBILE INS. CO. (No. 8908.)

(Court of Civil Appeals of Texas. Ft. Worth. Nov. 2, 1918. Rehearing Denied Dec. 7, 1918.)

1. JURY ⬉⟿34(3) — IMPAIRMENT OF RIGHT — EVIDENCE—QUESTIONS OF FACT.

A strong preponderance of evidence on one side or the other is not sufficient to justify a trial court in denying the right of trial by jury.

2. JURY ⬉⟿34(3) — IMPAIRMENT OF RIGHT — EVIDENCE—QUESTIONS OF LAW AND FACT.

In view of Const. art. 1, § 15, preserving the right to jury trial, and Vernon's Sayles' Ann. Civ. St. 1914, art. 2024, limiting the number of new trials, it is the province of the jury to determine the credibility of witnesses and the weight of testimony, and the court may not assume its functions by deciding that testimony is entitled to no credit because overborne by contradictory testimony, or that it is so contradictory to circumstances and proof as to be improbable.

3. INSURANCE ⬉⟿668(3)—ACTIONS ON POLICY —CANCELLATION OF PROVISIONS—QUESTION OF FACT.

In a suit on an automobile insurance policy, where the car was destroyed in a collision, evidence as to whether or not, subsequent to the issuance of the original policy, the collision features therein had been canceled by mutual agreement between insured and insurer, held in conflict, and to make a question for the jury.

Appeal from District Court, Tarrant County; Bruce Young, Judge.

Action by Mrs. S. M. Drew, administratrix of the estate of Mrs. Willie Mae Jackson, against the American Automobile Insurance Company. From an instructed verdict for defendant, plaintiff appeals. Reversed and remanded.

Simpson & Estes and A. L. Moore, all of Ft. Worth, for appellant.

J. W. Kearby, of Ft. Worth, for appellee.

BUCK, J. Mrs. S. M. Drew, administratrix of the estate of Mrs. Willie Mae Jackson, filed suit against the American Automobile Insurance Company of St. Louis for recovery under a policy issued on an automobile owned by E. A. Jackson, the husband of Mrs. Willie Mae Jackson. Plaintiff alleged that she was the duly appointed administratrix of the estate of Mrs. Jackson; that E. A. Jackson died April 24, 1916, and that his wife, Mrs. Willie Mae Jackson, died subsequent to his death; that E. A. Jackson died intestate, and that his wife was his sole heir, and that subsequent to the wife's death plaintiff was appointed administratrix of her estate; that on March 29, 1916, the defendant issued to E. A. Jackson its certain policy of insurance, providing, among other things, insurance against loss to or damage of the automobile by collision, and that said policy was in full force and effect in all of its provisions at the time of E. A. Jackson's death; that E. A. Jackson was killed on said April 24, 1916, by reason of being run into and over by a railroad train, and that in said accident the automobile, in which he and his wife were riding and upon which the policy had been issued, was destroyed. She further alleged said automobile, at the time of said collision and destruction, was of the reasonable value of $1,500, and was at said time owned by E. A. Jackson, and that all the conditions required by the terms of said policy had been duly performed; that thereupon defendant became liable to plaintiff for the value of the automobile so destroyed, and had refused to pay for same.

Defendant answered by general demurrer; and further pleaded that, while it had issued the policy upon the automobile in question, and said policy contained a provision of insurance against loss by reason of a collision, yet that subsequent to the date of its issuance E. A. Jackson had declined to accept the policy with the clause and provision as to the insurance against loss or damage by collision, and had requested that that feature of the policy be eliminated and canceled, and that he be allowed credit for the amount of the premium charged for this particular feature of the insurance, to wit, $67; that thereupon the defendant did cancel said feature and provision of the policy, and did give said Jackson credit for the $67 charged therefor, and that the "rider" providing for the insurance against loss or damage by collision was removed from the policy by Jackson's agent, and returned to defendant's agents; that both the defendant's agent, O. H. Walton, and the insured and his agent, believed and understood that the "rider," removed and separated from the policy, contained the only provision as to insurance against collision, and that it was the intention of both the insurer and the insured that the feature of insurance against collision should be canceled, and that the defendant company would not be liable for any loss suffered by said Jackson under the collision feature of said policy. It was further alleged that the provision as to insurance against loss or damage by collision, contained in the regular form of the policy, and not included in the "rider" which had been attached, at the time of issuance, to said policy and thereafter removed, was overlooked by both the insured and his agent, and the insurer's agents, and all parties understood and believed that the written contract, as it appeared after the removal of the "rider," contained no collision insurance; that the defendant ratified and affirmed the action of its agents upon this understanding and belief.

Plaintiff, in a supplemental petition, denied the allegations made in defendant's answer as to the elimination or the cancellation of the collision insurance feature.

Upon trial plaintiff introduced evidence to show that the automobile had been destroyed by reason of a collision with a railroad train; that it was a complete wreck; that it was of the value immediately before this destruction of $1,350 to $1,400; that after the collision it was mere "junk"; that E. A. Jackson and his wife were both killed by the accident, Mr. Jackson dying shortly before his wife. It was agreed that Mrs. Drew was the duly appointed, qualified, and acting administratrix of the estate of Mrs. Willie Mae Jackson, deceased, wife of E. A. Jackson, deceased. It was shown that said administratrix was custodian of the books, insurance policies, and other records belonging to the estate, and that the policy as sued upon contained a provision that, in case of loss or damage to the automobile by reason of a collision, the measure of damages recoverable by the insured against the insurer was the value of the automobile at the time of the collision.

The defendant's testimony tended strongly to show that J. A. Phinney. the employé and agent of E. A. Jackson, and acting under the express instructions of said Jackson, had requested defendant's agents, Mitchell, Gartner & Walton, to eliminate and cancel the collision feature, and that the "rider" having reference to this feature, but apparently only in the way of limitation, had been removed; that it was the intention, however, of E. A. Jackson and his agent, and of defendant's agents, that the policy as originally issued should be changed and the collision feature eliminated. From an instructed verdict in favor of defendant the plaintiff has appealed.

The only question presented for our consideration is as to whether, under the facts and pleadings disclosed, the court properly gave a peremptory instruction. We are of the opinion that when plaintiff introduced the evidence as to her capacity to bring suit, as to the issuance of the policy containing the provision against loss or damage by reason of collision, as to the destruction of said automobile, and the value thereof at the time it was destroyed, especially in connection with other circumstances hereafter shown, she made a prima facie case.

[1] There was no denial on defendant's part that the policy, as introduced in evidence, contained a provision against loss or damage by collision, but its only defense was that such provision had been left in the policy by mutual mistake. The preponderance of the evidence may be said to have been in favor of defendant's plea, yet a strong preponderance of evidence on one side or the other is not sufficient to justify a trial court in denying the right of trial by jury. A party having introduced sufficient evidence to support a verdict in his favor is entitled to have the issue submitted, no matter how strong the contradictory evidence may be; and in determining this question an appellate court must consider the evidence in its most favorable aspect for the plaintiff in error or appellant, disregarding conflicts and contradictions.

[2] It is particularly the province of the jury to determine the credibility of witnesses and the weight to be given to their testimony, and for the court to decide that the testimony is entitled to no credit because overborne by contradictory testimony, or that it is so contrary to circumstances in proof as to render it improbable, is to improperly assume the function of the jury and is reversible error. Harpold v. Moss et al., 101 Tex. 540, 109 S. W. 928; Eastham v. Hunter, 98 Tex. 560, 86 S. W. 323.

As was said by Judge Hunter of this court in the case of Bowman v. Texas Brewing Co., 17 Tex. Civ. App. 446, 43 S. W. 808:

"If the jury are 'the exclusive judges of the facts proved,' a judge has no legal right to invade their exclusive jurisdiction. Their powers, in our system of jurisprudence, are as high, as sacred from invasion, and as well defined as his; and he has no more right to assume the performance of their exclusive functions than they have to arrogate the performance of his. Of course, he may grant a new trial, if in his judgment the evidence does not sustain the verdict; but, where there is any evidence to support the cause of action or defense pleaded, the issue of fact must be submitted to the jury. * * * And so regardful is our law of the rights of the jury and the sanctity of its verdict that only two new trials can be granted by the judge to each party, except where the jury have been guilty of misconduct, or erred in matter of law."

See Gaunce v. Ry. Co., 20 Tex. Civ. App. 33, 48 S. W. 524; Shifflet v. Ry. Co., 18 Tex. Civ. App. 57, 44 S. W. 918; Taylor et al. v. Flint et al., 24 Tex. Civ. App. 394, 59 S. W. 1126; Constitution of Texas, § 15, art. 1; Vernon's Sayles' Texas Civil Statutes, art. 2024.

Appellee presents a counter proposition to appellant's first assignment, as follows:

"Where there is no conflict in the evidence, the court may assume the fact thus established as proved, in cases in which but one conclusion could be reached from the evidence;"

and cites in support of the proposition a number of cases, among others Gulf Ry. v. Cornell, 84 Tex. 541, 19 S. W. 703; Wilson v. Simpson, 80 Tex. 279, 16 S. W. 40; Teal v. Terrell, 58 Tex. 257; Mitchell v. De Witt, 20 Tex. 294; Hedgepeth v. Robertson, 18 Tex. 858. The holding in the cited cases supports appellee's counter proposition, but the announcement of the law and rule of practice is, in our opinion, not applicable to the case before us.

[3] In addition to the testimony introduced by plaintiff, above mentioned, which, in our opinion, presented a prima facie right to recover, there are certain other features of testimony in the record which the jury had the right to consider in order to determine whether defendant's contention, that a change in the policy had been made at the request of the insured and with the consent of the insurer, was established or not. For instance, Mrs. Drew testified that after her qualification as an administratrix, of course some time subsequent to the death of E. A. Jackson, and further removed from the time when defendant alleges the change in the policy to have been requested by E. A. Jackson and made by it, a bill for the full amount of the premium, to wit, $149, including the $67 charged for the collision feature of the policy, was sent by the agents of the insurance company to the administratrix for payment; that there was no credit on this bill or statement of the $67; and that later she returned the claim to the insurance agents to have it verified, and that said bill was not thereafter returned to her.

M. B. Simpson testified that he returned from New York about June 12th or 13th, and that upon his return Mrs. Drew showed him the claim of the insurance company, which, according to the best of his recollection, was for $149 premium on the policy, and that the same was returned to the agents for verification; that there was no credit on said bill. He further testified that he thought he talked with Mr. Walton, one of defendant's agents, before he (witness) went to New York, and that said Walton told him that the collision clause had been canceled.

C. W. Harris, office manager and bookkeeper for the administratrix, testified that J. A. Phinney, who had occupied a similar position with E. A. Jackson, left the office the day the witness took charge and turned over everything to the latter; that E. A. Jackson was killed on April 24th, and witness took charge of the office on May 13th; that one of the bills that was in the office at the time was that of Mitchell, Gartner & Walton against the estate of Willie Mae Jackson, and the charge on that bill for the premium on the insurance policy in question was $149, with no credit as to that premium; he stated that there was a balance on the bill that had been brought down, presumably for other insurance, and this item was added to it, and then there was a credit of probably $50; he called upon the agents to verify this bill, but later heard nothing further from it; that the conversation he had with the agents with reference to this matter was about June 13th or 14th.

D. H. Kernaghan testified that he was an accountant, employed to audit the books and records of the Jackson estate; that there was an account on these books between E. A. Jackson and Mitchell, Gartner & Walton, and that there was a charge on that account for the premium on the policy in question, showing E. A. Jackson as the assured, in the amount of $82, on March 29, 1916; that there was no entry in any of the books examined or audited by him where E. A. Jackson took credit for $67 on account of the cancellation of any part of this policy; that in keeping books it is customary for bookkeepers, where a bill has been rendered for the sum of $149, and subsequent thereto there is a credit of $67 allowed on the bill, leaving a balance of $82, to enter on the books the resultant amount of $82, but that if he were keeping the books he would show the entire charge and the subsequent credit; that the entries on the books covering this matter were in Mr. Phinney's handwriting.

The evidence further showed that, prior to his employment by E. A. Jackson, J. A. Phinney had been employed by J. W. Mitchell, who subsequently became a member of the firm of Mitchell, Gartner & Walton, and that he worked for said Mitchell for about six years; that his relations with the firm of Mitchell, Gartner & Walton were pleasant and nothing more; that the notation made in red ink on the policy, to wit, "Expires 3—29—17," and the further notation in red ink, "$82.00," written just above the typewritten figures "$149.00," and the further notation written on the back of the policy of "balance $82.00," was written by him (Phinney) when he got the correct figures with reference to the cancellation of the collision indorsement. He testified:

"The corrected figures on this policy are in my handwriting. The original figures showed the premium $149.00, and that has been changed so as to show the premium $82.00, the typewritten figures '$149.00,' being erased and the pen and ink figures '$82.00' being substituted. I drew a pen through the typewritten figures and put the ink figures above."

We think enough of the evidence has been quoted and referred to, to show that there was a conflict with reference to whether or not there had been, subsequent to the issuance of the original policy, a cancellation agreed upon by both the insured and the insurer, and that upon this feature the state of the evidence makes the case a proper one for the jury, and that the court erred in directing a verdict.

For the reasons stated the judgment is reversed and the cause remanded.